UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAMAR DANIELS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-01752-JMS-TAB |
| ) | |
| C. COOKE, ) | |
| CHRISTINA NELMS, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PLAINTIFF'S MOTION FOR A TRIAL DATE**

Indiana prisoner Ramar Daniels brings this 42 U.S.C. § 1983 civil rights action, alleging that the defendants violated his First and Fourteenth Amendment rights when they retaliated against him by preparing false disciplinary reports and finding him guilty of those false charges when he was incarcerated at Pendleton Correctional Facility (Pendleton) and Correctional Industrial Facility (CIF).

The defendants have moved for summary judgment on all of Mr. Daniels' claims except his Fourteenth Amendment claim against defendant Cooke regarding the disciplinary proceeding at Pendleton. The defendants argue that the claims that arose when Mr. Daniels was incarcerated at CIF are time-barred. They also argue that there is no evidence that either defendant had a retaliatory motive when they participated in disciplinary proceedings against Mr. Daniels at Pendleton. For the reasons explained in this Order, the defendants' motion for summary judgment, dkt. [88], is **granted in part and denied in part.**

## I. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. Facts

The facts are either undisputed or presented in the light most favorable to Mr. Daniels, the party opposing summary judgment. *Baptist v. Ford*, 827 F.3d 599, 599 (7th Cir. 2016). As for disputed facts presented in Mr. Daniels' favor, the court does not vouch for the objective truth of these facts; the court simply assumes them to be true for purposes of ruling on this motion. *See Stark v. Johnson & Johnson*, 10 F.4th 823, 825 (7th Cir. 2021).

### A. The Parties

Mr. Daniels is now incarcerated at Pendleton Correctional Facility. Defendant Christina Cooke was a correctional officer at Pendleton and is now a Sergeant there. She previously worked at CIF. Defendant Christina Nelms was an Investigator at Pendleton.

### B. Mr. Daniels' Location History and Disciplinary Proceedings

Mr. Daniels was incarcerated at CIF from January 2016 through June 14, 2017. Daniels Deposition, dkt. 90-1 at 26-27. He was incarcerated at New Castle Correctional Facility from June 14, 2017, to March 2, 2018, and was then transferred to Pendleton. *Id*. This lawsuit is about two disciplinary actions against Mr. Daniels: CIC 16-08-0060 (CIF Action) and ISR 19-02-0212 (Pendleton Action). Dkt. 90-19 at 4.

#### 1. CIF Action

On July 29, 2016, a correctional officer at CIF wrote a conduct report against Mr. Daniels for making threatening statements in a grievance appeal. Dkt. 90-3. Defendant Cooke was the hearing officer who found Mr. Daniels guilty of the offense. Dkt. 90-6. His sanctions included a loss of 60 days of good credit time. *Id*. Defendant Nelms was not involved in the CIF Action. Dkt. 90-1 at 38. On August 17, 2017, this Court vacated Mr. Daniels' disciplinary conviction,

3

holding that his statements did not meet the Indiana Department of Correction's definition of threatening. *Daniels v. Knight*, 1:16-cv-3115-LJM-MJD, in the record at dkt. 90-7.

### 2. Pendleton Action

On February 20, 2019, defendant Nelms wrote a conduct report accusing Mr. Daniels of assaulting another inmate based on her review of video evidence of an alleged incident on February 17, 2019. Dkt. 90-11. Mr. Daniels testified at his deposition that Defendant Nelms interviewed him about the incident before she wrote the conduct report. Dkt. 90-1 at 92-93. He denied assaulting the other inmate and denied being affiliated with a gang. *Id*. It is Mr. Daniels' contention that defendant Nelms wrote the conduct report in retaliation for Mr. Daniels' refusal to agree that he was in a gang and had assaulted an inmate. *Id*. at 91.

Defendant Cooke found Mr. Daniels guilty of assault. Dkt. 90-14 at 1. His sanctions included one year in disciplinary segregation, a loss of one year of good time credit, and a demotion in credit-earning class. *Id*. On May 5, 2020, this Court vacated Mr. Daniels' disciplinary conviction because it was not possible by watching the video alone to identify the assailant or even to confirm that an inmate was assaulted. *Daniels v. Zatecky*, 1:19-cv-02135-RLY-TAB, in the record at dkt. 90-16.

### III. Discussion

#### A. CIF Action

Suits under § 1983 use the statute of limitations and tolling rules that states employ for personal-injury claims. *See Savory v. Cannon*, 947 F.3d 409, 414 (7th Cir. 2020) ("For a section 1983 claim, federal courts look to state law for the length of the limitations period."). In Indiana, the applicable statute of limitations period is two years. *See Richards v. Mitcheff*, 696 F.3d 635,

637 (7th Cir. 2012); Ind. Code § 34–11–2–4. A claim related to a disciplinary conviction accrues when the conviction is vacated. *Johnson v. Winstead*, 900 F.3d 428, 431 (7th Cir. 2018).

Here, Mr. Daniels' claims related to the CIF action are time-barred. Mr. Daniels' cause of action related to the CIF Action accrued, at the latest, on August 17, 2017, when the district court vacated his disciplinary conviction. Dkt. 90-7. . Mr. Daniels signed his complaint initiating this action on June 18, 2020, approximately ten months after the expiration of Indiana's two-year statute of limitations. Dkt. 1 at 4. His claims related to the CIF Action are therefore barred by the statute of limitations.

### B. Pendleton Action

#### 1. Retaliation Claim

Mr. Daniels alleges that the defendants retaliated against him by participating in false disciplinary proceedings against him at Pendleton. To succeed on a First Amendment claim for retaliation, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

The defendants argue that Mr. Daniels has not shown that his First Amendment activity was a motivating factor in them taking the alleged retaliatory actions.[1] They first argue that there

---

[1] Although the defendants do not dispute that Mr. Daniels has satisfied the first two elements of his retaliation claim, the Court notes that his statements to defendant Nelms that he did not stab another inmate satisfy the *Turner* test for speech protected by the First Amendment because defendant Nelms could have no legitimate penological reason to regulate truthful speech during a prison investigation (and for the purposes of summary judgment the Court must accept Mr. Daniels' statements as true). *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (holding that prisoner speech is protected if "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009) (Courts apply "the *Turner* legitimate penological interest test to determine whether [an inmate] has alleged that he engaged in protected speech."). Furthermore, Mr. Daniels spent a year in segregation before his disciplinary conviction was overturned. Such a deprivation would

is no evidence that defendant Cooke found Mr. Daniels guilty because of his prior grievances. But Mr. Daniels testified at his deposition that he had previously filed grievances against defendant Cooke and that she told him that she would find him guilty any time she served as a disciplinary hearing officer in a case against him. Daniels Affidavit, dkt. 90-1 at 38-39. He also testified that defendant Nelms filed a false conduct report against him because she was angry that he would not confess to being gang affiliated and to stabbing another inmate. Dkt. 90-1 at 90.

Defendant Nelms next argues that her report was not false, and that Mr. Daniels admitted at his deposition that her conduct report was written before she interviewed him. Dkt. 89 at 16. But Mr. Daniels' deposition testimony is actually the opposite of what the defendants say it is:

> Q: So just to be clear, so the incident occurred – I know your testimony is that it wasn't you who did it. You were interviewed, and then the -- you were interviewed more than once. And after all of those interviews were done, then the conduct report was written, correct?
>
> A: No. She -- no. Let me explain. I apologize if I explained wrong. My initial interview she did was after the conduct report was written -- I mean, after the situation. So then she did an interview to question me about the situation. And in that interview she asked me was I affiliated, and did I assault Offender Williams. That's when I told her I wasn't affiliated, and I didn't assault Offenders Williams. And they took me back to my cell location, and then I was given the conduct report. I believe I was given the conduct report then. I ain't really sure. But it was after the situation, but before I actually physically received the conduct report. You understand what I'm saying? It was after the situation, but before I received the physical conduct report.
>
> Dkt. 90-1 at 91-92.

The conduct report reflects that the incident occurred on February 17, 2019, and that the conduct report was written on February 20, 2019. Dkt. 90-11. Defendant Nelms provides no

---

deter a person of ordinary firmness from engaging in protected speech. *See Babcock v. White*, 102 F.3d 267, 274 (7th Cir. 1996) (placing an inmate in segregation for one year for filing grievances states a retaliation claim).

testimony to rebut Mr. Daniels' testimony that she interviewed him before she wrote the conduct report.

Defendant Nelms insists that there is no evidence her conduct report was false. Dkt. 89 at 15. In support, she relies on her interrogatory response stating that she never wrote a false conduct report. Dkt. 90-18 at 5. But her conduct report was based on her review of video evidence. And the federal district court determined that "[a]lthough the reports claim that the video shows Daniels stab Williams, it is simply not possible to identify the assailant from the video itself. It is not even clear from the video that an inmate was stabbed." *Daniels v. Zatecky*, 1:19-cv-02135-RLY-TAB, available in the record at dkt. 90-16 at 6.

A reasonable jury could conclude from the evidence in the record that defendant Nelms wrote a false conduct report in retaliation for Mr. Daniels' insistence that he was not a gang member and did not stab another inmate. Similarly, a jury could conclude, based on defendant Cooke's alleged statement that she would find Mr. Daniels guilty of any conduct violation brought before her, that she retaliated against Mr. Daniels when she found him guilty of stabbing another inmate.

Therefore, the defendants' motion for summary judgment is **denied** as to Mr. Daniels' retaliation claim for the Pendleton Action.

### 2. Fourteenth Amendment Claim Against Defendant Nelms

Mr. Daniels alleges that defendant Nelms violated his Fourteenth Amendment due process rights when she wrote a false disciplinary report against him, causing him to lose good-time credits, be demoted in credit-earning class, and be placed in segregation for one year. Dkt. 90-14 at 1.

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018).

The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

There is no evidence in the record that defendant Nelms participated in Mr. Daniels' disciplinary hearing. Her only involvement is writing the conduct report which Mr. Daniels alleges is false. But the writing of a false conduct report does not violate due process. *Lagerstrom v. Kingston*, 463 F.3d 621, 624-25 (7th Cir. 2006) (due process rights are not violated if a false conduct report is filed). Any impropriety with a conduct report and the investigation thereof would be properly addressed during the disciplinary proceedings where the due process mandates of *Wolff* control. "[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999). Mr. Daniels' due process claim against defendant Cooke, who served as the disciplinary hearing officer, is proceeding. But defendant Nelms did not participate in the hearing and thus did not participate in any violation of Mr. Daniels' due process rights. *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) ("For constitutional violations under § 1983 or *Bivens*, a government official is only liable for his or her own misconduct."); *see also Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (same).

Because defendant Nelms was not personally involved in the alleged due process violations, she is entitled to summary judgment on this claim.

### 3. Qualified Immunity

Because the Court has determined that material disputes of fact remain as to Mr. Daniels' retaliation claim arising from the Pendleton incident, the Court addresses the defendants qualified immunity argument as to this claim.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 137 S. Ct. 548, 551 (2017) (citation and internal quotation marks omitted). To overcome an assertion of qualified immunity, a plaintiff must show that "(1) the defendant violated a constitutional right, and (2) that [the] right was clearly established at the time of the alleged violation." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). In other words, qualified immunity is appropriate when the clearly established law, as applied to the facts, "would have left objectively reasonable officials in a state of uncertainty." *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018).

Defendants argue that case law is clear that there can be no retaliation before the relevant First Amendment activity occurs. But this argument is based on the defendants' incorrect reading of Mr. Daniels' deposition. When defendant Nelms interviewed Mr. Daniels in relation to when she wrote the conduct report is a disputed fact.

Defendant Nelms does not argue that Mr. Daniels' statements during her interview with him were not protected by the First Amendment. And it is clearly established that correctional officers violate the constitution when they retaliate against an inmate after his protected speech. *Pearson v. Welborn*, 471 F.3d 732, 741-42 (7th Cir. 2006) (rejecting prison official's qualified immunity argument because it was well established that inmate's verbal complaints were protected by the First Amendment).

Under some "extraordinary circumstances," an official may be entitled to qualified immunity based on reasonable ignorance of clearly established law governing the official's conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *see also Amore v. Navarro*, 624 F.3d 522, 535 (2d Cir. 2010) (officer entitled to qualified immunity despite arresting plaintiff under statute that had been held unconstitutional). But the defendants provide no evidence of such extraordinary circumstances.

Because it was clearly established that it is unconstitutional to retaliate against an inmate after he makes statements protected by the First Amendment, and because a genuine issue of fact remains as to whether defendant Nelms was motivated by Mr. Daniels' statements when she wrote the conduct report against him, summary judgment on the grounds of qualified immunity is not appropriate. *Isby v. Brown,* 856 F.3d 508, 530 (7th Cir. 2017). Accordingly, defendant Nelms is not entitled to judgment as a matter of law based on qualified immunity.

### IV. Conclusion

For the reasons discussed above, the defendants' motion for partial summary judgment, dkt. [88], is **granted as to** all claims related to the CIF Action and as to the Fourteenth Amendment claim against defendant Nelms and **denied as to** the retaliation claim against both defendants for their involvement in the Pendleton Action. No partial summary judgment shall issue.

The claims remaining in this action relate to the Pendleton Action:

- A Fourteenth Amendment claim against defendant Cooke, and
- Retaliation claims against both defendants.

These claims will be resolved through settlement or trial.

Because it is the Court's preference that Mr. Daniels be represented by counsel for trial or any potential settlement conference, Mr. Daniels shall have **through June 3, 2022**, in which to

file a motion for assistance with the recruitment of counsel. The **clerk is directed** to include a motion for counsel form with Mr. Daniels' copy of this Order.

Mr. Daniels' motion for a trial date, dkt. [99], is **granted to the extent** a trial date will be set in due course. After counsel is appointed, the Magistrate Judge is requested to set this matter for a telephonic status conference to discuss what further development is necessary for trial and if the case is amenable to settlement.

**IT IS SO ORDERED.**

Date: 5/12/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RAMAR DANIELS
104542
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

W. Andrew Kirtley
INDIANA ATTORNEY GENERAL
andrew.kirtley@atg.in.gov

Magistrate Judge Tim A. Baker